UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DINO N. THEODORE,<br>and ACCESS WITH SUCCESS, INC.,<br>Plaintiffs<br><br>v.<br><br>THE LOWELL GENERAL HOSPITAL,<br>Defendants | CIVIL ACTION NO.: 1:11-cv-12311DPW |

## CONSENT DECREE

The plaintiffs, Dino N. Theodore and Access with Success, Inc. ("plaintiffs") commenced this action on December 27, 2011 against The Lowell General Hospital ("LGH") in its capacity as the operator of The Lowell General Hospital, 295 Varnum Avenue, in Lowell, Massachusetts, pursuant to Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189, and the U.S. Department of Justice's implementing regulation, 28 C.F.R. Part 36, alleging, *inter alia*, that LGH violated Title III of the ADA by discriminating on the basis of disability against persons who are mobility impaired and discriminated against those related to or associated with them. LGH has denied the plaintiffs' allegations and has raised affirmative defenses.

WHEREAS, the parties have conferred in good faith and agree that the pending litigation should be settled without the need for further litigation or trial; and

WHEREAS, the parties agree that this Court has jurisdiction over the parties and the subject matter of this action.

NOW THEREFORE, the parties agree that the controversy should be resolved without further proceedings and without an evidentiary hearing and, therefore, consent to the entry of this Consent Decree.

## I. DEADLINE

It is understood by the parties that the completion of particular actions contemplated by this Consent Decree may be delayed due to circumstances beyond the parties' control, and therefore, the parties agree to consider requests to extend such timelines and deadlines in a reasonable manner and agree not to withhold any agreement to so extend unreasonably. LGH shall complete the architectural barrier remediation contemplated by this Consent Decree by August 31, 2013.

## II. EFFECTIVE DATE AND DURATION OF THE CONSENT DECREE

The provisions of this Consent Decree and the agreements contained herein are effective as of the date of entry of this Consent Decree on the Court's docket as an order of the Court and shall remain in effect until all of LGH's obligations hereunder have been satisfied.

## III. LIMITED SCOPE OF CONSENT DECREE

The requirements of this Consent Decree apply only to the 295 Varnum Street campus of LGH.

## IV. ACCESS BARRIERS AND CORRECTIVE ACTION PLANS

   A. **Parking**

1. Patients and visitors currently may park their vehicles in the following locations:

    i. The parking lot located adjacent to the newly constructed Dahod Building;

    ii. The central parking garage located downhill from the Mansfield Pavilion;

    iii. The small parking lot located adjacent to the Emergency Room;

2

    iv.    The parking lot adjacent to the Medical Office Building; and

    v.    The parking lot adjacent to the Cancer Center.

    vi.    The Hanchett parking lot is accessible to the Hanchett Building, which houses administrative offices and some doctors' offices, and from which all LGH buildings except for the Medical Office Building are accessible.

2. There are currently 598 parking spaces for LGH patients and visitors at the 295 Varnum Street campus. Of these, 357 are within the Central Parking Garage. However, the Central Parking Garage is downhill from many of the LGH buildings and, therefore, those buildings are not as accessible from the Central Parking Garage as it is from other parking facilities. Accordingly, LGH will locate additional accessible parking spaces in other parking facilities and, for each such additional accessible parking space, LGH will designate one less accessible parking space within the Central Parking Garage. In total, LGH will have no fewer than 59 parking spaces available for patients and visitors that are wheelchair accessible. Of these, LGH will have no fewer than 9 parking spaces that are van accessible.

3. The following sets forth the anticipated number of wheelchair and van accessible parking spaces that will be designated in each parking area. If and to the extent LGH designates fewer than the number of wheelchair and/or van accessible parking spaces than are described below, LGH will add at least the same number of wheelchair and/or van accessible parking spaces in another parking area.

    i.    <u>Parking at the Dahod Building</u>

1. The 2010 Standards for Accessible Design (hereinafter, the "Standards" or "Standard" when referring to a particular one) require that at least ten percent of patient and visitor parking spaces at outpatient medical facilities (such as emergency rooms within in-patient hospitals) be wheelchair accessible (Standard 208.2.1).

3

2. The main entrance of the Dahod Building is wheelchair-accessible. As per Standard 209.3, the accessible entrance of the Dahod Building has an adjacent, accessible passenger-loading zone. There is an accessible route joining the adjacent parking area to the main entrance of the Dahod Building.

3. There are a total of 62 parking spaces in the parking area adjacent to the main entrance of the Dahod Building.

4. As per Section IV.A.2, above, LGH shall restripe the parking lot that serves the Dahod Building so that at least eleven (11) patient and visitor parking spaces are wheelchair accessible in compliance with Standards 502 and 503.

5. Of these eleven accessible parking spaces, at least one (1) shall be van accessible in accordance with Standard 208.2.4.

6. In accordance with Standard 502.2, accessible car parking spaces shall be 96 inches wide minimum and van parking spaces shall be 132 inches wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3.

7. Access aisles serving car and van parking spaces shall be 60 inches wide minimum. (Standard 502.3.1).

8. As per Standard 502.3, two parking spaces shall be permitted to share a common access aisle.

9. LGH shall identify all wheelchair-accessible parking spaces at the Dahod Building with the international symbol of accessibility applied to the ground surface and with above ground signage that complies with Standard 502.6. Van accessible spaces shall have an additional sign that identifies the parking spaces as "van accessible."

4

10. In accordance with Standard 208.3.1, LGH shall locate all wheelchair-accessible parking spaces that serve the Dahod Building on the shortest accessible route to the accessible main entrance of the Dahod Building.

    ii. <u>Central Parking Garage</u>

1. As per Section IV.A.2, above, LGH shall restripe the floor surface of the Central Parking Garage as follows:

    i. Doctors' lot: LGH shall restripe the Doctors' lot in the Central Parking Garage so that two (2) of the 57 total parking spaces shall be wheelchair accessible in compliance with Standards 502 and 503.

    ii. Ground level: LGH shall restripe the ground floor of the Central Parking Garage so that three (3) of the 34 available parking spaces shall be wheelchair accessible in compliance with Standards 502 and 503.

    iii. Level 2: LGH shall restripe Level 2 of the Central Parking Garage so that four (4) of the 65 available parking spaces shall be wheelchair accessible in compliance with Standards 502 and 503.

    iv. Level 3: LGH shall restripe Level 3 of the Central Parking Garage so that two (2) of the 67 available parking spaces shall be wheelchair accessible in compliance with Standards 502 and 503.

    v. Level 4: LGH shall restripe Level 4 of the Central Parking Garage so that two (2) of the 67 available parking spaces shall be wheelchair accessible in compliance with Standards 502 and 503.

    vi.    Roof Level: LGH shall restripe the Roof Level of the Central Parking Garage so that four (4) of the 67 available parking spaces shall be wheelchair accessible in compliance with Standards 502 and 503.

2. In accordance with Standard 502.2, accessible car parking spaces shall be 96 inches wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3.

3. Access aisles serving parking spaces within the Central Parking Garage shall be 60 inches wide minimum. (Standard 502.3.1).

4. As per Standard 502.3, two parking spaces shall be permitted to share a common access aisle.

5. LGH shall identify all wheelchair-accessible parking spaces in the Central Parking Garage with the international symbol of accessibility applied to the ground surface and with above ground signage that complies with Standard 502.6.

6. In accordance with Standard 208.3.1, LGH shall locate all wheelchair-accessible parking spaces on the shortest accessible route to the accessible main entrance of the Medical Office Building.

    iii.    <u>Emergency Department Lot</u>

1. There are a total of 23 parking spaces in the Emergency Department Parking Lot.

2. As per Section IV.A.2, above, LGH shall restripe the Emergency Department Parking Lot so that at least six (6) patient and visitor parking spaces are wheelchair accessible in compliance with Standards 502 and 503.

6

3. In accordance with Standard 502.2, accessible car parking spaces shall be 96 inches wide minimum and van parking spaces shall be 132 inches wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3.

4. Access aisles serving car and van parking spaces within the Emergency Department Parking Lot shall be 60 inches wide minimum. (Standard 502.3.1).

5. As per Standard 502.3, two parking spaces shall be permitted to share a common access aisle.

6. LGH shall identify all wheelchair-accessible parking spaces in the Emergency Department Parking Lot with the international symbol of accessibility applied to the ground surface and with above ground signage that complies with Standard 502.6. Van accessible spaces shall have an additional sign that identifies the parking spaces as "van accessible."

7. In accordance with Standard 208.3.1, LGH shall locate all wheelchair-accessible parking spaces on the shortest accessible route to the accessible main entrance of the Emergency Department.

    iv.    <u>Medical Office Building Parking Lot</u>.

1. There are a total of 84 parking spaces in the Medical Office Building Parking Lot.

2. As per Section IV.A.2, above, LGH shall restripe the Medical Office Building Parking Lot so that at least twelve (12) patient and visitor parking spaces are wheelchair accessible in compliance with Standards 502 and 503.

3. Of the twelve accessible parking spaces in the Medical Office Building Parking Lot, at least four (4) shall be van accessible.

4.  In accordance with Standard 502.2, accessible car parking spaces shall be 96 inches wide minimum and van parking spaces shall be 132 inches wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3.

5.  Access aisles serving car and van parking spaces within the Medical Office Building Parking Lot shall be 60 inches wide minimum. (Standard 502.3.1).

6.  As per Standard 502.3, two parking spaces shall be permitted to share a common access aisle.

7.  LGH shall identify all wheelchair-accessible parking spaces in the Medical Office Building Parking Lot with the international symbol of accessibility applied to the ground surface and with above ground signage that complies with Standard 502.6. Van accessible spaces shall have an additional sign that identifies the parking spaces as "van accessible."

8.  In accordance with Standard 208.3.1, LGH shall locate all wheelchair-accessible parking spaces on the shortest accessible route to the accessible main entrance of the Medical Office Building.

    v.    <u>Cancer Center Parking Lot.</u>

1.  There are a total of 50 parking spaces in the Cancer Center Parking Lot.

2.  As per Section IV.A.2, above, LGH shall restripe the Cancer Center Parking Lot so that at least eight (8) patient and visitor parking spaces are wheelchair accessible in compliance with Standards 502 and 503.

3.  Of the eight accessible parking spaces in the Cancer Center Parking Lot, at least two (2) shall be van accessible.

4. In accordance with Standard 502.2, accessible car parking spaces shall be 96 inches wide minimum and van parking spaces shall be 132 inches wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3.

5. Access aisles serving car and van parking spaces within the Cancer Center Parking Lot shall be 60 inches wide minimum. (Standard 502.3.1).

6. As per Standard 502.3, two parking spaces shall be permitted to share a common access aisle.

7. LGH shall identify all wheelchair-accessible parking spaces in the Cancer Center Parking Lot with the international symbol of accessibility applied to the ground surface and with above ground signage that complies with Standard 502.6. Van accessible spaces shall have an additional sign that identifies the parking spaces as "van accessible."

8. In accordance with Standard 208.3.1, LGH shall locate all wheelchair-accessible parking spaces on the shortest accessible route to the accessible main entrance of the Cancer Center.

  vi. <u>Hanchett Parking Lot</u>

1. There are a total of 22 parking spaces in the Hanchett Parking Lot.

2. As per Section IV.A.2, above, LGH shall restripe the Hanchett Parking Lot so that at least five (5) patient and visitor parking spaces are wheelchair accessible in compliance with Standards 502 and 503.

3. Of the five accessible parking spaces in the Hanchett Parking Lot, at least two (2) shall be van accessible.

4. In accordance with Standard 502.2, accessible car parking spaces shall be 96 inches wide minimum and van parking spaces shall be 132 inches wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3.

5.  Access aisles serving car and van parking spaces within the Hanchett Parking Lot shall be 60 inches wide minimum. (Standard 502.3.1).

6.  As per Standard 502.3, two parking spaces shall be permitted to share a common access aisle.

7.  LGH shall identify all wheelchair-accessible parking spaces in the Hanchett Parking Lot with the international symbol of accessibility applied to the ground surface and with above ground signage that complies with Standard 502.6. Van accessible spaces shall have an additional sign that identifies the parking spaces as "van accessible."

8.  In accordance with Standard 208.3.1, LGH shall locate all wheelchair-accessible parking spaces on the shortest accessible route to the accessible main entrance of the Hanchett.

### B. Patient Sleeping Rooms

1.  As per Standard 223.1.1, where sleeping rooms are altered or added to LGH, such alterations or additions shall be accomplished in a manner consistent with the requirements of Standard 223 until the number of sleeping rooms complies with Standard 223.2.1, which provides that at least 10 percent, but no less than one, of the patient sleeping rooms shall provide mobility features complying with Standard 805.

2.  As per Standard 805.4, toilet and bathing rooms that are provided as part of any accessible patient sleeping room at LGH shall comply with Standard 603.

## V. POLICIES AND PROCEDURES

1.  Pursuant to Joint Commission mandates, LGH is required to review its policies and procedures regularly. The policies and procedures subject to Joint Commission review include those that may be relevant to persons with disabilities, including: alternative formats; communication access; service access; scheduling exam rooms and patient room access;

location, maintenance, and use of accessible medical equipment; weight measurement; auxiliary aids and services; accessible websites; lifting and transferring patients with mobility disabilities; maintenance of accessible features, aids and services; and patient complaints. LGH also reviews policies and procedures on an ongoing and as-needed basis, typically no less frequently than every three years.

2. Pursuant to Joint Commission mandates, LGH is required to review its policies and procedures regularly. The policies and procedures subject to Joint Commission review include those relating to the services, treatment and care provided to individuals with disabilities (including, but not limited to, patients, their guests, and other visitors). LGH also reviews policies and procedures on an ongoing and as-needed basis, typically no less frequently than every three years.

3. LGH revises its policies and procedures on an as-needed basis, following regular review.

4. LGH has an admission policy applicable to all patients, including those individuals who have an existing spinal cord injury or similar condition. LGH shall establish an educational module, to be incorporated within its electronic learning center, which discusses and addresses the ADA in general.

5. LGH shall include on its web page and in other appropriate publications a disability assistance telephone number and an explanation of LGH's disability assistance process.

## VI. ACCESSIBLE MEDICAL EQUIPMENT

1. LGH evaluates medical equipment on an ongoing basis. Such evaluation considers the particular needs and concerns of patients with mobility disabilities and the medical professionals who provide care to such patients, and includes evaluation of examination tables and chairs, lifts, radiologic and diagnostic equipment, wheelchair scales, positioning equipment, specialized

air mattresses, or other adaptive technology for patients with disabilities, such as accessible call buttons and water sources.

2. LGH shall continue to acquire and put into service new accessible medical equipment on an as needed basis.

## VII. REPORTING: CERTIFICATION OF COMPLIANCE

1. No later than December 31, 2013, LGH shall submit to plaintiff's counsel a certification stating that LGH has complied with this Consent Decree.

## VIII. MISCELLANEOUS SETTLEMENT TERMS

1. The parties agree that time is of the essence in all respects regarding this Consent Decree. Therefore, LGH shall make reasonable efforts to complete the alterations and modifications required under this Consent Decree by August 31, 2013, provided that LGH may extend the period for additional time, if needed, with the plaintiffs' assent to the additional time requested. The plaintiffs shall not unreasonably withhold their assent and stipulation.

2. The parties agree that all alterations and modifications referenced herein shall be made to the maximum extent feasible and to the extent readily achievable.

3. The plaintiffs may review compliance with this Consent Decree at any time and may seek the Court's enforcement of this Consent Decree if they believe that LGH has violated its terms.

4. If the plaintiffs believe that LGH has violated this Consent Decree, they will first raise their concerns in writing with LGH and the parties will attempt to resolve the concerns in good faith. The plaintiffs will allow LGH thirty (30) days from the date it notifies LGH of any breach of this Consent Decree to cure that breach, prior to taking any court action to enforce the terms of this Consent Decree.

5. Any notice or communication required or permitted to be given to the parties hereunder shall be given in writing by email and first class United States mail, addressed as follows:

To Plaintiffs:

Nicholas S. Guerrera, Esq.
Shaheen, Guerrera & O'Leary, LLC
Jefferson Office Park
820A Turnpike Street
North Andover, MA 01845
Email: nguerrera@sgolawoffice.com

To Lowell General Hospital:

Martha J. Zackin, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111
617-542-6000
Email: mjzackin@mintz.com

6. The parties are unable to ascertain with specificity the value of damages that the plaintiffs will incur in the event that LGH breaches the terms of this Consent Decree. Accordingly, the parties agree that in the event that the alterations and modifications required hereby are not timely completed in all respects, the plaintiffs shall have the right to petition the Court for payment by LGH of liquidated damages in the amount not to exceed $150.00 per day for every day that any deadline is not met and until the required alterations and modifications are completed. The appropriate amount, if any, to be awarded will be determined by the parties or by the Court in relation to the severity of LGH's non-compliance and breach. The plaintiffs shall be entitled to an award of those liquidated damages and to obtain injunctive relief from the Court to compel compliance with the terms of this Consent Decree. Additionally, in the event the modifications and alterations are not completed by within the times specified hereunder, LGH shall pay reasonable additional attorneys' and expert's fees and costs incurred by the plaintiffs

subsequent to the date when this Consent Decree is entered on the docket as an order of the Court.

7. A failure by the plaintiffs to enforce any term of this Consent Decree shall not be construed as a waiver of their right to enforce any other portion of this Consent Decree.

8. The parties' settlement of the plaintiffs' claims for attorneys' fees and costs shall be the subject of a Separate Letter Agreement and shall remain confidential. Within ten (10) days of the entry of this Consent Decree on the Court's docket as an order of the Court, LGH shall pay plaintiffs' counsel, Nicholas S. Guerrera, all reasonable and agreed upon attorneys' fees, litigation expenses and costs incurred by the plaintiffs in this matter. The amounts to be paid shall be established by counsel for the parties by Separate Letter Agreement. The Separate Letter Agreement shall not be disclosed to anyone other than the attorneys, financial advisors and accountants of the parties to this Consent Decree, except by express written consent of the parties to this Consent Decree or as required by law, as required to enforce the terms of this Consent Decree or pursuant to an order of any Court.

9. The parties hereby acknowledge that under certain circumstances a tax credit and/or tax deduction may be available to businesses to help defray the cost of making access improvements. (See Sections 44 and 190 of the Internal Revenue Code).

10. The parties further acknowledge, represent, covenant and warrant that this Consent Decree constitutes the entire agreement of the parties and may not be modified, amended, annulled, rescinded or otherwise changed unless in writing signed by authorized representatives of the plaintiff and the defendant, which expressly refers to this Consent Decree.

11. The parties shall confirm in writing all agreed upon extensions of deadlines for completion of work required hereunder; the Court need not endorse such extensions of time.

12. The parties agree that any delays in making the modifications as provided for pursuant to this Consent Decree that are caused by third parties including, but not limited to, construction contractors, city building officials, inspectors or permitting departments will not be deemed to violate the compliance dates contained herein as long as the defendant makes a good faith effort to effect implementation as soon as reasonably possible thereafter after any delays are resolved.

13. The plaintiffs acknowledge, represent, covenant and warrant that they have not made any assignment of any right, claim, or cause of action covered by this release to any individual, corporation, or any other legal entity whatsoever.

14. This Consent Decree is final and binding on the parties, including all principals, agents, executors, administrators, representatives, successors in interest, beneficiaries, assigns, heirs and legal representatives thereof. Each party has a duty to so inform any such successor in interest.

15. In consideration of the Separate Letter Agreement referenced in Paragraph 7 and in consideration of the actions undertaken or to be undertaken by LGH under the terms of this Consent Decree, the plaintiffs, their employees, agents, attorneys, partners, principals, subsidiaries, affiliates, predecessors, successors, heirs, and assigns, hereby release and forever discharge the defendant, jointly and severally, its past, present and future officers, directors, trustees, beneficiaries, employees, agents, attorneys, partners, principals, subsidiaries, affiliates, divisions, parents, predecessors, successors, heirs and assigns, from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, executions, claims and demands whatsoever, in law or equity, whether known or unknown, foreseen or unforeseen, that the plaintiffs have ever had, or hereafter can, shall, or may have,

against the defendant, including claims under Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, et seq. from the beginning of the world to the date of this Consent Decree.

16. The parties understand and agree that the release and discharge language in Paragraph 14 above does not apply to any alleged breaches of this Consent Decree.

17. The parties stipulate and represent that they have the power and authority to execute and deliver this Consent Decree and to perform its obligations hereunder.

18. The effective date of this Consent Decree shall be the date of the Court's endorsement below.

19. Within ten (10) days of the effective date of this Consent Decree, the parties agree to file a joint notice indicating that the matter has been settled and requesting that the matter be dismissed, with prejudice, subject to the Court's retention of jurisdiction for the sole purpose of enforcing this Consent Decree.

20. This Consent Decree may be executed by each party in separate counterparts, each of which shall be deemed an original and constitute one document; faxed signatures shall be valid and acceptable.

21. The parties further acknowledge, represent, covenant and warrant that this Consent Decree may not be modified, amended, annulled, rescinded or otherwise changed unless in writing signed by authorized representatives of the plaintiffs and the defendant, which expressly refers to this Consent Decree. The Court must endorse all substantive changes to this Consent Decree.

22. This Consent Decree shall be construed under the laws of the Commonwealth of Massachusetts without regard to its conflict of laws and rules.

23. Nothing in this Consent Decree shall be construed as an admission by LGH of any liability or fault or that any of the plaintiffs' allegations are true, or that any person suffered any injury as a result of the events as alleged by the plaintiffs.

24. This Consent Decree shall not be offered or received in evidence in any action or proceeding in any court or other tribunal as an admission or concession of liability or wrongdoing of any nature on the part of LGH except in an action challenging LGH' compliance with this Decree.

_____
Dino N. Theodore, Plaintiff, Individually and as
a Director and Authorized Representative
of Access with Success, Inc.
Dated:


_____
The Lowell General Hospital,
By its Authorized Agent and Representative
Dated:


Adopted, Approved, and Ordered by the Court:

_____
Judge, United States District Court for The District
of Massachusetts
Dated: June 3, 2013

16922294v.1



17

23. Nothing in this Consent Decree shall be construed as an admission by LGH of any liability or fault or that any of the plaintiffs' allegations are true, or that any person suffered any injury as a result of the events as alleged by the plaintiffs.

24. This Consent Decree shall not be offered or received in evidence in any action or proceeding in any court or other tribunal as an admission or concession of liability or wrongdoing of any nature on the part of LGH except in an action challenging LGH' compliance with this Decree.

---

Dino N. Theodore, Plaintiff, Individually and as
a Director and Authorized Representative
of Access with Success, Inc.
Dated:

_JAWHITE_

The Lowell General Hospital,
By its Authorized Agent and Representative
Dated: 5 · 24 · 13

Adopted, Approved, and Ordered by the Court:

_Douglas P. Woodlock_

Judge, United States District Court for The District
of Massachusetts
Dated: June 3, 2013

16922294v.1



17